**SO ORDERED.**

**SIGNED this 23 day of July, 2010.**



Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line use and print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

**BLACK ANGUS HOLDINGS, LLC,**

                  **DEBTOR.**

**CASE NO. 09-21349
CHAPTER 11**

**MEMORANDUM OPINION AND ORDER ON MORTGAGE LIEN PRIORITY
DISPUTE BETWEEN CEF FUNDING, L.L.C. AND PEOPLE'S BANK**

The question before the Court is the priority of the mortgage liens on Debtor's fee

interest in real property located at 7335 W. 119th Street, Overland Park, KS (hereafter the

"Overland Park Property"), which was one of the locations from which Debtor operated a

Back Yard Burger restaurant. CEF Funding, L.L.C. (hereafter "CEF") claims a first

priority lien by virtue of after acquired property provisions in a ground lease mortgage of

the same property. People's Bank (hereafter "Peoples") claims a first priority lien by

virtue of a mortgage granted to Peoples by Debtor to secure a loan of funds to purchase the fee interest.

The question of lien priority arose during resolution of CEF's motion for relief from stay to exercise its right under loan documents with the Debtor, including mortgages on four tracts, one of which is the Overland Park Property. Peoples objected to the motion with respect to the Overland Park Property, in which it asserted a mortgage interest. A consent order was approved on the motion for relief providing for the payment of adequate protection as a condition to the stay remaining in place, defining CEF's allowed secured claim, establishing procedures for Debtor's marketing of the Overland Park Property, and establishing a schedule for disposition of the following issues relating to the Overland Park Property:

> i. Whether CEF holds a valid and perfected mortgage lien and security interest upon the Debtor's interests in the Overland Park Property.
>
> ii. If CEF holds a valid and perfected mortgage lien and security interest upon the Debtor's interests in the Overland Park Property, the scope and priority of such mortgage lien and security interest.
>
> iii. Whether Peoples Bank holds a valid and perfected mortgage lien and security interest upon the Debtor's interests in the Overland Park Property.
>
> iv. If Peoples Bank holds a valid and perfected mortgage lien and security interest upon the Debtor's interests in the

Overland Park Property, the scope and priority of such
mortgage lien and security interest. [1]

This opinion addresses the foregoing issues, which have been fully briefed by the parties.[2]

The Court has jurisdiction.[3]

**FINDINGS OF FACT.**

The parties entered into a stipulation of fact for purposes of resolution of the issues

before the Court, which is hereby adopted as the Court's findings of fact. The

stipulations are as follows: [4]

**A. CEF Claims.**

1. In June, 2001, Black Angus Holdings, LLC (the "Debtor") acquired four

existing, operating Back Yard Burger restaurants located in Johnson County, Kansas at

the following addresses: (i) 124 N. Clairborne, Olathe, Kansas; (ii) 5959 Barkley,

Mission, Kansas; (iii) 7404 Nieman Road, Shawnee, Kansas; and (iv) at 7335 W. 119th

Street, Overland Park, Kansas (the "Overland Park Property")(collectively, the "Four

---

[1] Doc. 142.

[2] CEF appears by Michael E. Brown and others of Kutak Rock, LLP, Kansas City, Missouri and Omaha, Nebraska. Peoples appears by Benjamin M. Wells and Wesley F. Smith, of Stevens & Brand, LLP, Lawrence, Kansas.

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for relief from stay and objections to exemptions are core proceedings which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(G) and (K). There is no objection to venue or jurisdiction over the parties.

[4] Doc. 145 (references to attachments omitted).

3

Restaurants").  The assets acquired by the Debtor consisted primarily of: (i) leasehold, but not fee ownership, interests in the real estate upon which the Four Restaurants were located; (ii) the buildings and improvements at the Four Restaurants locations; (iii) the furniture, fixtures and equipment at the Four Restaurants locations; (iv) inventories and supplies located at the Four Restaurant locations; and (iv) franchise rights to operate Back Yard Burger restaurants at the Four Restaurants locations.

2. The Debtor's acquisition of the Four Restaurants was accomplished through an Asset Purchase Agreement (the "Asset Purchase Agreement") by and among McNicoll Developments, Inc., as seller of the Four Restaurants, the Debtor, as buyer, and Michael McNicoll as shareholder of the Seller.

3. The Debtor used proceeds of a loan from CEF's predecessor in interest to acquire the Four Restaurants.  Specifically, in June 2001, CEF's predecessor in interest loaned Black Angus Holdings, LLC the aggregate principal sum of $2,570,000 (the "CEF Loans").

4. The CEF Loans are evidenced by, inter alia, (i) a Master Loan Agreement (the "Loan Agreement") dated April 23, 2001; (ii) a Promissory Note ("CEF Note 1") dated as of June 19, 2001, in the original principal amount of $990,000.00; (iii) a Promissory Note ("CEF Note 2") dated as of June 20, 2001, in the original principal amount of $1,580,000; and (iv) a Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (the "CEF Mortgage") dated as of June 19, 2001 and filed of record

4

with the Register of Deeds of Johnson County, Kansas on June 21, 2001 in Book 7109, at Pages 700 *et seq.*

5. CEF is the holder of CEF Note 1, CEF Note 2 and is the assignee of the CEF Mortgage.

6. The CEF Mortgage was signed and acknowledged by the Debtor and filed in the records of the Register of Deeds of Johnson County, Kansas maintained for the real property described as:

> ALL THAT PART OF TRACT A, METCALF AT 119TH STREET DEVELOMENT (sic), A SUBDIVISION IN THE CITY OF OVERLAND PARK, JOHNSON COUNTY, KANSAS, AND THAT PART OF VACATED 119TH STREET DESCRIBED AS FOLLOWS:
> COMMENCING AT THE NORTHWEST CORNER OF SAID TRACT "A", SAID POINT BEING ON THE SOUTH RIGHT-OF-WAY LINE OF 119TH STREET, AS NOW ESTABLISHED; THENCE NORTH 87°40'39" EAST, ALONG THE SOUTH RIGHT-OF WAY LINE OF SAID 119TH STREET, 35.00 FEET TO A JOG THEREIN; THENCE NORTH 1°57'41" WEST, ALONG SAID JOG IN SAID SOUTH RIGHT-OF-WAY LINE, A DISTANCE OF 10.00 FEET; THENCE NORTH 87°40'39" EAST, CONTINUING ALONG SAID SOUTH RIGHT-OF-WAY LINE, A DISTANCE OF 165.00 FEET TO THE TRUE POINT OF BEGINNING OF THE TRACT OF LAND TO BE HEREIN DESCRIBED; THENCE SOUTH 1°57'41" EAST, PARALLEL WITH THE WEST LINE OF SAID TRACT "A", 251.26 FEET TO A POINT ON THE SOUTH LINE OF SAID TRACT "A"; THENCE NORTH 88°02'19" EAST, ALONG THE SOUTH LINE OF SAID TRACT "A", 83.46 FEET; THENCE NORTH 2°19'21" WEST, 251.78 FEET TO A POINT ON THE SOUTH RIGHT-OF WAY LINE OF SAID 119TH STREET; THENCE SOUTH 87°40'39" WEST, ALONG SAID SOUTH RIGHT-OF-WAY LINE, A DISTANCE OF 81.88 FEET TO THE POINT OF BEGINNING.
> (the "Overland Park Property Legal Description").

7. As part of the Debtor's acquisition of the Four Restaurants, the Debtor obtained a leasehold interest in the Overland Park Property. Specifically, through an Assignment and Assumption of Lease Agreement dated June 11, 2001, (the "Overland Park Lease Assignment") by and among NTW Incorporated, as assignor, McNicoll Developments, Inc., as landlord, and the Debtor, as assignee, NTW Incorporated assigned all of its right,

title, estate and interest in a Lease Agreement (the "Overland Park Lease") for the Overland Park Property.

8. The Overland Park Lease Assignment was recorded in the records of the Register of Deeds of Johnson County, Kansas on June 21, 2001, at Book 7109, Page 680 et seq. The Overland Park Lease Assignment was indexed in the records of the Register of Deeds of Johnson County, Kansas maintained for the real property defined by the Overland Park Property Legal Description.

9. The Overland Park Lease provided the Debtor with the right to lease and use the Overland Park property for a term of years.

10. At all times since June 21, 2001, the CEF Mortgage has remained on file with the Register if Deeds of Johnson County, Kansas and indexed in such records for the real property defined by the Overland Park Property Legal Description. At all times since June 21, 2001, Black Angus Holdings, LLC has owed obligations to the holder of Note 1 and Note 2.

11. Black Angus Holdings, LLC is in default of its obligations under the terms of Note 1, Note 2 and the CEF Mortgage, for, inter alia, failing to make principal and interest payments as and when due. The outstanding principal that is due and owing pursuant to Note 1 is at least $760,549.07. The outstanding principal that is due and owing pursuant to Note 2 is at least $910,693.58.

**B. Peoples Bank Claims**

12. In August, 2005, Peoples Bank loaned the Debtor the principal sum of $240,000 (the "Peoples Bank Loan").

13. The Debtor used the proceeds from the Peoples Bank Loan to acquire a fee ownership interest in the Overland Park Property.

14. The Debtor acquired its fee ownership interest in the Overland Park Property through a Special Corporation Warranty Deed (the "Overland Park Property Deed") dated as of August 15, 2005, made and granted by NTW Incorporated, as the fee owner of the Overland Park Property, to the Debtor as grantee. The Overland Park Property Deed was filed of record with the Register of Deeds of Johnson County, Kansas on August 18, 2005.

15. The Peoples Bank Loan is evidenced by, inter alia: (i) a Promissory Note ("the Peoples Bank Note") dated as of August 15, 2005, in the original principal amount of $240,000.00; and (ii) a Mortgage (the "Peoples Bank Mortgage") dated as of August 12, 2005, and filed of record with the Register of Deeds of Johnson County, Kansas on August 18, 2005.

16. The Peoples Bank Mortgage was signed and acknowledged by the Debtor and filed in the records of the Register of Deeds of Johnson County, Kansas maintained for the real property defined by the Overland Park Property Legal Description.

17. At all times since August 18, 2005, the Peoples Bank Mortgage has remained on file with the Register of Deeds of Johnson County, Kansas and indexed in such records

Case 09-21349   Doc# 182   Filed 07/23/10   Page 7 of 21

for the real property defined by the Overland Park Property Legal Description. At all times since August 15, 2005, the Debtor has owed obligations to Peoples Bank.

18. The Debtor is in default of its obligations under the terms of Peoples Bank Note and the Peoples Bank Mortgage, for, inter alia, failing to make principal and interest payments as and when due. The outstanding principal that is due and owing pursuant to the Peoples Bank Note is at least $213,723.62.

**C. Additional Stipulations.**

19. All Exhibits attached hereto are incorporated herein by this reference.

20. With respect to the liens granted pursuant to and by the CEF Mortgage, such liens were validly perfected by the filing of the CEF Mortgage.

21. With respect to the liens granted pursuant to and by the Peoples Bank Mortgage, such liens were validly perfected by the filing of the Peoples Bank Mortgage.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. CEF and Peoples hold valid and perfected mortgage liens on Debtor's real property interests in the Overland Park Property.**

This case concerns the extent and priority of third parties' interests in property of the estate. Since the real property is located in Kansas, the law of Kansas controls.[5] The stipulated facts leave no doubt that under Kansas law both CEF and Peoples hold valid and perfected mortgage liens in Debtor's entire interest in the Overland Park Property.

**1. The CEF mortgage lien.**

_____

[5] *See Butner v. United States*, 440 U.S. 48 (1979).

8

As to CEF, the only unusual aspect of its lien is the fact that Debtor acquired fee interest after the mortgage was executed. In June 2001, when Debtor granted the mortgage to CEF's predecessor, Debtor did not own the fee interest but was the holder of a ground lease and related interests. Hence the mortgage was initially in the leasehold interest and the buildings, improvements, and other interests described in the mortgage.

However, the mortgage clearly expressed intent that any after acquired interest in the fee interest would also be subject to the mortgage. The recitals on page one of the mortgage describe the property mortgaged to include all of Debtor's right, title and interest in the Overland Park Property "now owned or hereafter acquired." The terms of mortgage preclude merger of the leasehold estate and the fee interest, if the later is acquired, and provide "if Borrower shall acquire such fee estate [covered by the Ground Lease], then this instrument shall simultaneously and without further action be spread so as to become a lien on such fee interest." Exhibit A to the mortgage, describing the real property subject to the mortgage, states:

> The Property consists of that certain leasehold estate,
> together with and including all right, title, and interest of
> Borrower therein, which embraces and covers the real
> property hereinafter described ....
>           * * *
> [legal description of Overland Park Property]
>
> Together with all right, title and interest of Borrower in
> and to any option to purchase, options or rights of first refusal
> and renewal options or rights with respect to the Ground
> Lease or the Property or any portion thereof or any interest
> therein and in and to any greater estate in the Property,

9

> including the fee simple estate, as may be subsequently
> acquired by or released to Borrower.

Hence, CEF's mortgage provided that the fee interest in the Overland Park Property would be subject to the mortgage lien, if Debtor acquired that interest, which debtor did in August 2005.

Mortgages routinely apply to after acquired property through the doctrines of accessions and fixtures.[6] The Kansas Supreme Court has held that a mortgage of land subject to a railroad right of way at the time of the mortgage attaches to the right of way when it is abandoned and reverts to the landowner.[7] After acquired property clauses are even used to grant the mortgagee an interest in a later acquired tracts of land in addition to that described in the mortgage document.[8]

Peoples does not challenge CEF's position that its June 2001 mortgage is effective to effect a conveyance of a lien on the after acquired fee interest and the recording of the June 2001 mortgage perfected that interest. This Court has no doubt that the Kansas Supreme Court would find that CEF's mortgage lien, perfected by the recording on June 21, 2001,[9] extends to Debtor's after acquired fee interest in the Overland Park Property.

---

[6] Restatement (Third) of Property (Mortgages) § 7.5, cmt. a.(1997); see 54A Am.Jur.2d Mortgages § 26 (updated 2010).

[7] *Fed. Farm Mortg. Corp. v. Smith*, 149 Kan. 789, 89 P.2d 838 (1939).

[8] Restatement (Third) of Property (Mortgages) at § 7.5, cmt.a.

[9] This statement should not be interpreted to state that the perfection of the lien on the fee dates relates back to the date of filing of the mortgage. The Court is only finding that the 2001 recording of the mortgage is effective as to the fee interest, as well as the interests held by the Debtor on the date of the mortgage.

10

### 2. Peoples' mortgage lien.

As to Peoples, the 2005 mortgage granted a lien in the Overland Park Property, "[t]ogether with all rights, easements, appurtances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacement that may now, or at any time in the future, be part of the real estate described." Peoples was thus granted a lien in all of Debtor's real property interests[10] in the Overland Park Property and that lien was perfected by recording on August 18, 2005. CEF does not dispute the validity or perfection of Peoples' lien. CEF also does not dispute the fact that the proceeds of the obligation secured by Peoples' lien were used by Debtor to purchase the fee interest in the Overland Park Property which was conveyed by a Special Corporation Warranty Deed, executed on August 15, 2005.

### B. Peoples' purchase money lien in Debtor's fee interest has priority over CEF's lien on the same interest.

The dispute in this case is over the priority of the liens in Debtor's fee interest in the Overland Park Property. CEF claims a first priority lien under the first to file rule,[11] since its mortgage was recorded in June 2001, before Peoples was given its mortgage in 2005. Peoples claims priority as the holder of a purchase money lien on the same interest.

---

[10] *Lane v. Woodruff*, 1 Kan. App. 241, 40 P. 1079 (1895) (a mortgage upon real estate creates a lien upon whatever estate, right, or title the mortgagor may have in the real estate mortgaged).

[11] K.S.A. 58-2222.

There is no Kansas law directly on point, so the task of this Court is to predict how the

Kansas Supreme Court would rule, considering all resources available.[12]

The general rule, which is followed in Kansas,[13] is that "a purchase-money

mortgage is entitled to a preference as such over all other claims or liens arising through

the mortgagor, although they are prior in point of time."[14]  Commentators state:

> It is widely accepted that a purchase money mortgage,
> executed at the same time with the deed of purchase of land,
> or in pursuance of agreement as part of one continuous
> transaction, takes precedence over any other claim or lien
> attaching to the property through the vendee -mortgagor.  This
> is so even though the claim antedates the execution of the
> mortgage to the seller.  It will also have priority if it is in
> favor of a third person who advanced the purchase money
> paid to the vendor, provided the money was loaned for this
> purpose only.[15]

 The Restatement of Property, which the Kansas Court of Appeals has found to be

consistent with Kansas law,[16] recognizes the priority of purchase money mortgage liens.

It states:

> A purchase money mortgage, whether or not recorded, has
> priority over any mortgage, lien, or other claim that attaches
> to the real estate but is created by or arises against the

---

[12] *Morris v. The CIT Group (In re Charles)*, 323 F.3d 841, 843 (10th Cir. 2003).

[13] *E.g., Warren Mortg. Co. v. Winters*, 94 Kan. 615, 146 P.1012 (1915); *Amer. Gen. Financial Serv., Inc. v. Carter,* 39 Kan. App.2d 683, 184 P.3d 273 (2008).

[14] 55 Am.Jur.2d Mortgages § 291 (updated 2010).

[15] 1 Grant S. Nelson and Dale A. Whitman, *Real Estate Finance Law* § 9.1(5th ed., current through 2009 update).

[16] *Amer. Gen. Financial Serv., Inc. v. Carter,* 39 Kan. App.2d at 687, 184 P.3d at 277.

> purchaser-mortgagor prior to the purchaser-mortgagor's
> acquisition of title to the real estate.[17]

The comments to the restatement state that the rule is "justified on grounds of fundamental fairness."[18] The rule "is not limited to judgment lienors;" it also applies to "those whose claims are based on mortgages of after-acquired property."[19] "Because third party lending is the dominant source of purchase money land financing in this country, a rule which facilitates such lending is especially beneficial to the national real estate economy. Applying the rule to benefit third party lenders is plainly fair."[20]

In Kansas, there is no statute addressing the general principle of priority of purchase money mortgages. However the piecemeal legislation which exists give preference to purchase money interests. The only statute cited by the parties is K.S.A. 58-2305, which provides: "A mortgage given by a purchaser to secure the payment of purchase money shall have preference over a prior judgment against such purchaser." A Kansas homestead is not "exempt from sale for payment of obligations contracted for the purchase thereof,"[21] and a purchase money mortgage is superior to any homestead

[17] Restatement (Third) of Property (Mortgages) § 7.2(b)(1997, current through April 2010).

[18] *Id.*, cmt.(b).

[19] *Id.*

[20] *Id.*

[21] K.S.A. 59-401. Article 15, section 9 of the Kansas Constitution provides in part: A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; *but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of*

rights.[22]  As to personal property attached to real estate, a perfected purchase money

security interest in a fixture has priority over a pre-existing mortgage.[23]

The Kansas appellate courts recognize the general rule of priority of purchase

money mortgages over other liens attaching through the mortgagor.  The Kansas Supreme

Court in 1915 stated:

> One who executes a purchase-money mortgage is not
> regarded as obtaining the title and then placing an
> encumbrance on it.  He is deemed to take the title charged
> with the encumbrance, which has priority even over pre-
> existing claims.  And a mortgage given to a third person to
> obtain the money used in buying the property is entitled to the
> same preference.[24]

The Kansas Court of Appeals in a 2008 case quoted with favor the following from an

unpublished Court of Appeals opinion:

> "The purchase money mortgage holds a special priority
> position over other liens and encumbrances arising through
> the mortgagor.  It is well established that a purchase money
> mortgage executed contemporaneous to the deed of purchase
> takes precedence over all other claims or liens attaching to the
> property through the mortgagor, including claims antedating
> the execution of the mortgage.  Our Supreme Court has stated
> that a mortgage to secure the purchase money which is given
> 'simultaneously with a deed for the property and as a part of
> the same transaction takes precedence over *all existing and
> subsequent claims and liens of every kind against the*

*improvements thereon . . ..* (emphasis added).

[22] *Foster Lumber Co. v. Harlan County Bank*, 71 Kan. 158, 80 P. 49 (1905).

[23] *Capitol Fed. Saving and Loan Ass'n. v. Hoger*, 19 Kan. App.2d 1052, 880 P.2d 281(1994).

[24] *Warren Mortg. Co. v. Winters*, 94 Kan. 615, 619, 146 P.1012, 1013(1915).

> *mortgagor.*' Additionally, K.S.A. 58-2305 provides that a
> purchase money mortgage 'shall have preference over a prior
> judgment against' the purchaser."[25]

The rationale for the superior status is that the purchase money mortgagor is not regarded as obtaining title to the property and then executing a mortgage; rather he acquires the property already subject to the encumbrance in favor of the purchaser money lender.[26] Given this rationale, statutory authority for the status is not necessary, as priority follows from the general rule that any other lien would attach only to the property interest of the obligor, which is subject to the purchase money lien when acquired by the obligor.

Litigation of priority issues between conflicting purchase money mortgages and other liens therefore usually pose the question whether there are statutes or other considerations which defeat the special status of the purchase money lien and elevate the priority of the non-purchase money lien. For example, in *American General Financial Services,*[27] the Court of Appeals held that a purchase money mortgage has priority over a tax lien, since a tax lien is similar to a judgment lien which is by statute inferior to a purchase money lien. On the other hand, in *Shade*[28] the Kansas Supreme Court held that the lien of a purchase money mortgage is inferior to a mechanics' lien where the

---

[25] *Amer. Gen. Financial Serv., Inc.* v. Carter, 39 Kan. App.2d at 688-689, 184 P.3d at 278 (2008), *quoting Mutual Benefit Life Insur. Co. v. Cross Town East, Inc.*, No. 63,829, unpublished opinion filed December 22, 1989, slip op. at 5-6, 785 P.2d 184, rev. denied 246 Kan. 768 (1990) (citations omitted).

[26] *Warren Mortg. Co. v. Winters*, 94 Kan. at 619 , 146 P. at 1013.

[27] *Amer. Gen. Financial Serv., Inc. v. Carter*, 39 Kan. App.2d at 689, 184 P.3d at 278.

[28] *Shade v. Wheatcraft Indus., Inc.*, 248 Kan. 531, 809 P.2d 538 (1991).

mechanics' lien attached after execution of the mortgage but before the mortgage was recorded and the mechanics' lienholder had no actual notice of the prior mortgage.[29]  The court found that Kansas statutes, particularly the mortgage recording act, reflect legislative intent that it is a duty of a purchase money mortgagee, as any other mortgagee, to record promptly to preserve priority over innocent mechanics' lienholders.[30]  In addition, a purchase money lien is subordinate to a lien for improvements on the property where the mortgagee authorized the work or it was done with his knowledge or his is estopped by his conduct to assert priority.[31]

The question in this case is whether the circumstances of CEF's leasehold mortgage caused Peoples' purchase money lien to loose its priority.  If there is a special circumstance here, it must be because the legal description of the Overland Park Property mortgaged to CEF included the fee interest, if later acquired, in addition to leasehold estate, the improvements, and other property interests held by the mortgagor at the time of execution.  The only case cited by CEF to support its priority based upon the relation of the fee interest to the ground lease is *Chapman*,[32] a 1932 decision of the California Supreme Court.  That case involved a mortgage of a leasehold interest where the lease included an option to purchase the underlying fee.  The option was exercised.  The issue

---

[29] *Id.*, 248 Kan. at 536, 809 P.2d at 542.

[30] *Id.*

[31] *Golden Belt Lumber Co. v. Klinzman*, 138 Kan. 877, 28 P.2d 736 (1934).

[32] *Chapman v. Great Western Gypsum Co.*, 216 Cal. 420, 14 P.2d 758 (1932).

presented was whether the lien of the mortgage attached to the fee. The court held that the option to purchase the fee was a real property interest to which the mortgage lien attached. Therefore, after exercise of the option, the fee was also subject to the mortgage. *Chapman* does not support CEF's claim of priority. Peoples concedes that CEF has a mortgage lien on the fee interest. The issue here is priority, not attachment. *Chapman* does not address priority of the lien in relation to a lien securing funds advanced to exercise the option.

The fact that the CEF mortgage was recorded first does not cause the later recorded purchase money lien to loose its priority. Purchase money priority is an exception to general rule of priority based upon the time of recording. In fact, the Kansas Supreme Court has held that a purchase money mortgage retains its higher priority even if it is recorded after a second non-purchase money mortgage on the same property.[33] The Court stated, "[t]the weight of authority seems to support the view that a purchase-money mortgage because of its character as such has priority over another, which is not defeated by the mere circumstance of the other reaching the register first, where the purchase-money mortgage is recorded without any unnecessary delay after its delivery."[34] However, the purchase money priority reaches only to the interests purchased with the

---

[33] *Kuehn v. Amer. Nat'l Bank of Pryor, Okl.*, 117 Kan. 717, 232 P. 1060 (1925).

[34] *Id.*, 117 Kan. at 719 , 232 P. at 1061.

funds advanced; it does not extent to preexisting interests of Debtor which were also described in the Peoples mortgage.[35]

The Court rejects any suggestion by CEF that its lien on the after-acquired fee interest attached at the time the mortgage was executed rather at the time the fee interest was acquired, there by giving it priority under the first to file rule. CEF's mortgage identifies the interest as property to be acquired to which the mortgage will spread. Unlike the *Chapman* case, Debtor's leasehold mortgage did not grant a lien in an option to purchase, which the California court found was itself a real property interest. The CEF mortgage did not grant a lien in a present fee interest; the mortgage included an agreement that an after-acquired property interest would also be subject to the mortgage lien. At the time of the mortgage, Debtor had no interest in the fee simple interest to which the mortgage could attach. CEF provides no authority to support the proposition that the priority of a lien on after acquired property relates back to the date of the recording of the initial mortgage instrument.[36] As mentioned above, the rationale stated by the Kansas Supreme Court for the priority of a purchase money lien is that when the mortgagor acquires the fee interest the lien of the purchase money lender has already attached. Given this reasoning, when Debtor received title to the fee it was already

---

[35] *Resolution Trust Corp. v. Bopp*, 18 Kan App.2d 271, 850 P.2d 939 (1993) (purchase money priority over judgment lien only to the extent the funds advanced were actually used for the purchase and construction of home).

[36] For example, see K.S.A. 58-2336, providing for priority of future advances from the date of recording a mortgage when made pursuant to a future advance clause and the advances do not exceed the maximum amount stated in the mortgage.

subject to the purchase money lien and the lien of CEF which attached when Debtor acquired the fee was necessarily second in priority after the purchase money lien, without regard to the earlier date of recording of the CEF mortgage.

CEF also argues purchase money lien priority is limited to a conflict with a judgment lien against the mortgagor's interest. It urges that the Kansas Legislature in K.S.A. 58-2305 specifically chose to limit the priority to judgment liens and if it intended to grant purchase money liens priority over other conflicting interests it would have enacted explicit legislation. The Court rejects this argument as inconsistent with Kansas case law. The statute giving purchase money liens over judgment liens has been in effect since 1868.[37] Yet, as discussed above, the Kansas appellate courts have consistently recognized the general principle of the priority of purchase money liens over conflicting liens, including, but not limited to judgment liens. As stated above, given the rationale of the Kansas Supreme Court for the priority of purchase money liens, that the property comes into the hands of the mortgagor already subject to the lien of the purchase price, no statutory authority for the special status is required, since the usual rules of attachment and priority dictate the result recognized by the courts. However, to the extent the CEF is arguing that Peoples' purchase money lien is not entitled to priority based upon K.S.A. 58-2305, the Court agrees. The statute is limited to judgment liens, and CEF is not

---

[37] G.S. 1868, ch. 68.

asserting a judgment lien. Peoples does not rely upon K.S.A. 58-2305 as a basis for its priority position.

The Court therefore concludes that the Kansas Supreme Court would hold that Peoples' mortgage lien securing funds loaned to purchase the Debtor's fee interest in the Overland Park Property is prior to CEF's lien arising under its ground lease mortgage. Even though earlier filed, CEF's mortgage lien on the fee interest is of lower priority. Peoples' priority, however, is limited to the fee interest and does not extend to the improvements, rents, and other real property interests conveyed by the Peoples' mortgage which were not purchased with funds advanced by Peoples. The Court finds this to be a just and equitable result. Peoples advanced the funds which made Debtors' purchase of the fee possible and it relied upon getting paid from that interest. Without Peoples' advance to the Debtor, CEF would have no lien on the fee interest. CEF's predecessor did not rely upon the value of the fee when entering into the transaction; if CEF were to have a first priority lien it would be given a windfall at the expense of Peoples.

**CONCLUSION.**

For the foregoing reasons the Court finds:

1. CEF holds a valid and perfected mortgage lien and security interest upon Debtor's interests in the Overland Park Property.

2. CEF's lien in the Overland Park Property is of higher priority than the lien of Peoples as to all interests subject to the lien except the fee interest in the Overland Park Property which was acquired with the proceeds of Peoples Bank's 2005 loan.

20

3. Peoples Bank holds a valid and perfected mortgage lien and security interest upon Debtor's interests in the Overland Park Property.

4. Peoples Bank's lien in the Overland Park Property is of lower priority than the lien of CEF as to all interests subject to the lien except the fee interest in the Overland Park Property which was acquired with the proceeds of Peoples Bank's 2005 loan.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**IT IS SO ORDERED.**

**###**